UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ENZO RIVERS,                    )
                               )
            Plaintiff,         )        CIVIL ACTION
      v.                       )        NO.  12-10529-PBS
                               )
SEAN CARTER, et al.,           )
                               )
            Defendants.        )

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

March 11, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff Enzo Rivers ("Rivers") is a state prisoner currently incarcerated at MCI

Norfolk.  He has brought a pro se civil rights action under 42 U.S.C. § 1983 in which he

alleges that Jean LaHousse ("LaHousse"), the Director of Treatment at MCI Norfolk,

used racial epithets on several occasions in 2009, thereby violating his constitutional

rights.  Rivers also alleges that LaHousse retaliated against him in various ways when he

objected to LaHousse's offensive language.  In addition to LaHousse, Rivers named Sean

Carter, a rapper artist, as a defendant, alleging Carter's use of racial epithets during his

speaking tours contributed to LaHousse's employment of the same language.

LaHousse filed a "Motion to Dismiss and/or Summary Judgment" (Docket No.

27), which was considered by the District Judge along with several other motions.  As

detailed in her Memorandum and Order dated September 28, 2012 (Docket No. 48), the District Judge dismissed all the claims against Carter and LaHousse except for Rivers' claim for retaliation against LaHousse.  LaHousse had moved to dismiss the retaliation claim on the grounds that Rivers had failed to exhaust his administrative remedies, and had otherwise failed to state a claim.

The District Judge ordered that LaHousse's motion to dismiss the retaliation claim would be treated as a motion for summary judgment, and Rivers was given "an opportunity to present material that is pertinent to the issue of exhaustion of administrative remedies in regards to his retaliation claim."  (Docket No. 48 at 6).  In addition, Rivers was ordered "to address the defendant's contention that he has failed to adequately articulate LaHousse's involvement in the alleged retaliatory actions and that he has otherwise failed to state a claim for relief in regards to the alleged retaliation."  Id. In response to the Court's Order, Rivers filed an Affidavit in which he confirmed that the record of the administrative grievance he had filed was attached to his complaint. (Docket No. 52).  In addition, he filed a document entitled "Affidavit/Retaliation Response to the Court's Memorandum and Order Dated 10/3/2012, 12:43 PM Plaintiff's Reply" with attached affidavits from other inmates (Docket No. 53), and a document entitled "Order to Show Cause Reply from Plaintiff Enzo Rivers - To the Court Order to Dismiss Sean Carter and the Defendant Jean LaHousse - Plaintiff's Reply" (Docket No. 54) addressing the merits of his retaliation claim.  Accordingly, the remainder of

LaHousse's Motion to Dismiss and/or Summary Judgment, which has been referred to this court for a Report and Recommendation, is now ripe for review.

After a careful review of the entire record, this court concludes that Rivers has failed to exhaust his administrative remedies with respect to his retaliation claim.[1] Therefore, this court recommends that LaHousse's "Motion to Dismiss and/or Summary Judgment" (Docket No. 27) be ALLOWED in its entirety.

## II.  STATEMENT OF FACTS[2]

In his complaint, Rivers contends that defendant LaHousse, as Director of Treatment at Old Colony Correctional Center, violated his civil rights by subjecting him to the use of a racially derogatory term on several occasions in 2009, and by retaliating against him after he complained, all in violation of 42 U.S.C. § 1983.  The exact parameters of Rivers' retaliation claim are unclear from the complaint, although he has made general allegations that he was denied access to the general population law library and the general population recreation yard, has suffered physical abuse and bullying from other inmates, was placed on AA (awaiting action) status for more than a week in confinement, was threatened by guards, and was denied hot meals purportedly in retaliation for objecting to LaHousse's statements.  See Complaint (Docket No. 1) ("Compl.") ¶¶ 17, 19 and insert (J).

---

[1]  In light of this conclusion, this court has not reached the defendant's claim regarding the sufficiency of the pleadings relating to retaliation.

[2]  The facts are limited to those relating to the remaining retaliation claim.

A review of the attachments to the complaint establishes that Rivers filed one grievance relating to LaHousse's conduct which was dated September 19, 2009 and given Grievance #42961.  Therein, he objected to LaHousse's use of the word "Nigger," and demanded that LaHousse be removed from her position and that he be awarded monetary damages to compensate him for his mental injuries and pain and suffering.  The grievance was referred to Internal Affairs on October 1, 2009, where it was given Intake #12251. Internal Affairs "sustained" Rivers' allegations against LaHousse, and Rivers was purportedly so notified by letter dated June 24, 2010, which is not attached to the complaint.  Rivers apparently appealed, and attached to the complaint is an Inmate Grievance Appeal Form dated September 12, 2010, which refers to Grievance Nos. 42961 and 12251.  By this appeal, Rivers was seeking the termination of LaHousse's employment and compensation payable to him "for the pain and suffering he had to endure, from her verbal abuse of calling me a Nigger and the physical abuse I endured at the hands of other inmates and staff here at OCCC."  By letter dated September 29, 2010, Internal Affairs reiterated that the outcome of Intake #12251 was that the allegations Rivers had made against LaHousse were sustained.  Rivers has submitted no other evidence relating to any other grievance.

In support of her motion for summary judgment, LaHousse submitted the Affidavit of Kara Morello-Quinn ("Morello-Quinn Aff."), a paralegal employed by the Massachusetts Department of Correction ("DOC").  (Docket No. 28-3).  Attached to the affidavit is the formal DOC Inmate Grievance Procedure, which can be found at 103

C.M.R. § 491.  <u>Morello-Quinn Aff.</u> Ex. A.  In addition, Ms. Morello-Quinn attested as

follows:

> 3.   The DOC maintains a record of inmate grievances on a computer database.  I have access to this database and can review all grievances filed by inmates.
>
> 4.   I have reviewed the database for grievances filed by inmate Enzo Rivers after September 16, 2009, including grievance no. 42961, Exhibit B attached, in which inmate Rivers complains about Director of Treatment Jean LaHousse using the word "nigger."  Inmate Rivers filed sixteen grievances after grievance no. 42961.
>
> 5.   None of these grievances complain about placement on awaiting action status in September 2009, denial of hot food, denial of law library access, denial of recreation, threats to harm, or actual physical injuries resulting from the September 17, 2009 incident with Ms. LaHousse.

<u>Id.</u> ¶¶ 3-5.

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

#### A.   Summary Judgment Standard of Review

Summary judgment is appropriate when the moving party shows, based on the

discovery and disclosure materials on file, and any affidavits, "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor

of either party.'"  <u>Vineberg v. Bissonnette</u>, 548 F.3d 50, 56 (1st Cir. 2008) (quoting

<u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is material only if it

possesses the capacity to sway the outcome of the litigation under the applicable law."
Id. (quotations, punctuation and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).  The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See Vineberg, 548 F.3d at 56.  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate."  Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).   Applying these principals to the instant case compels the conclusion that LaHousse's motion for summary judgment should be allowed.

B.    **Failure to Exhaust**

At issue is whether the defendant is entitled to summary judgment on the grounds that Rivers failed to comply with the exhaustion requirements of the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA").  For the reasons described below, this court finds that LaHousse is entitled to such relief.

The exhaustion provision of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The exhaustion requirement extends to available administrative appeals as well as to primary grievance procedures."  Alexander v. Univ. of Mass. Med. Sch., Civil Action No. 09-10776-RGS, 2009 WL 4030815, at *1 (D. Mass. Nov. 20, 2009) (slip op.).  Moreover, it "'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  Id. (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002)).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 918-19, 166 L. Ed. 2d 798 (2007).  Similarly, Massachusetts law, specifically Mass. Gen. Laws ch. 127, § 38F, has established "an exhaustion requirement similar to that of the

[PLRA]." <u>Ryan v. Pepe</u>, 65 Mass. App. Ct. 833, 835, 845 N.E.2d 1136, 1138 (2006).[3]

Accordingly, "[b]oth Federal and State law now expressly require inmates to exhaust

available grievance procedures before going to court." <u>Id.</u> at 839, 845 N.E.2d at 1141.

The exhaustion requirement requires "proper exhaustion." <u>Woodford v. Ngo</u>, 548

U.S. 81, 93, 126 S. Ct. 2378, 2387, 165 L. Ed. 2d 368 (2006). "[T]o properly exhaust

administrative remedies prisoners must 'complete the administrative review process in

accordance with the applicable procedural rules' – rules that are defined not by the

PLRA, but by the prison [administrative] process itself." <u>Jones</u>, 549 U.S. at 218, 127 S.

Ct. at 922 (quoting <u>Woodford</u>, 548 U.S. at 88, 126 S. Ct. at 2384). Thus, "[p]roper

exhaustion demands compliance with [the prison's] deadlines and other critical

procedural rules because no adjudicative system can function effectively without

imposing some orderly structure on the course of its proceedings." <u>Woodford</u>, 548 U.S.

at 90-91, 126 S. Ct. at 2386.

"The PLRA exhaustion requirement is an affirmative defense. A defendant thus

bears the burden of proving a prisoner's failure to exhaust [his] administrative remedies."

<u>Alexander</u>, 2009 WL 4030815, at *1. <u>See also Jones</u>, 549 U.S. at 216, 127 S. Ct. at 921

("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that

---

[3] Mass. Gen. Laws ch. 127, § 38F provides in relevant part that "[a]n inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to section 38E ...."

inmates are not required to specially plead or demonstrate exhaustion in their complaints.").  In the instant case, LaHousse has met this burden.

The purpose of the DOC grievance policy is to identify and investigate the problem, review administrative efforts to resolve the issue, and to exhaust all efforts to address the grievance.  103 C.M.R. § 491.10.  In the instant case, Rivers did file a grievance and it was addressed administratively.  That grievance, however, was limited to LaHousse's alleged use of the word "Nigger."  It did not relate to any of the retaliatory actions about which Rivers is now complaining.  Where, as here, an inmate has failed to exhaust his administrative remedies, his claim must be dismissed.  See Casanova v. DuBois, 289 F.3d 142, 147 (1st Cir. 2002) ("Although not jurisdictional, the exhaustion requirement is nonetheless mandatory.").

The only allegedly retaliatory conduct which is addressed at all at any time in the grievance procedure is found in Rivers' cryptic mention in his grievance appeal wherein he complains that he suffered physical abuse by inmates and staff.  However, not only did Rivers fail to file a grievance about the alleged conduct, but he also failed to identify any specific incident as required by the DOC grievance procedures.  See 103 C.M.R. § 491.09(2).  Moreover, he never purported to link it to any retaliation for LaHousse's conduct.  Therefore, this passing reference in his appeal form does not satisfy Rivers' exhaustion obligations.

## IV.  CONCLUSION

For all the reasons detailed above, this court recommends to the District Judge to whom this case is assigned that defendant LaHousse's "Motion to Dismiss and/or Summary Judgment" (Docket No. 27) be ALLOWED in its entirety.[4]


    / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

---

[4] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).